FREDERICK TAYLOR v. JAMES COOPER AND ADAM PIPPER.

*Landlord and tenant—Eviction—Damages—Evidence.*

1. In trespass by a lessee for his eviction from the leased premises, the lessor claimed that the lessee had surrendered his lease, which was denied by the lessee. The lessee was permitted to show on the cross-examination of one of the lessor's witnesses, who had testified to the admission by the lessee of such alleged surrender, that the witness had received a certain sum from the lessor by reason of his agreement to vacate other lands leased to him, and which, as also the premises leased to the plaintiff, were afterwards sold by the lessor. And it is held that the evidence did not tend to negative the alleged surrender by the plaintiff of the leased premises; that what the lessor paid to the witness in order to effect a sale of his lands was not competent evidence to show what the land was worth to the witness, or what damages the plaintiff had sustained by reason of the eviction; and that it was error to admit the testimony.

2. At the time of his eviction, the lessee had occupied the leased premises for three years, and had used them for market gardening. The term of the lease was five years. There was no evidence tending to show that the lessee was forced to remain idle for the remainder of the term, but, on the contrary, it appeared that he thereafter worked upon his own and other rented land. And it is held that the measure of his damages was the fair average value of the use of the land, less the rent agreed to be paid therefor.

3. Proof of the profits actually realized by the lessee during his three years' occupancy was competent, as tending to show the value to him of the leased premises.

4. The testimony of the lessee as to the probable yield of his strawberry patch and its probable market value, that he intended to crop the land with certain crops, and as to what, in his opinion, the value of the crops would be, as also the testimony of others as to what the land planted to garden vegetables would yield, was incompetent, because too speculative.

Error to Wayne. (Hosmer, J.) Submitted on briefs January 11, 1895. Decided February 12, 1895.

Trespass. Defendants bring error. Reversed. The facts are stated in the opinion.

*Henry Plass,* for appellants.

*Walter Barlow,* for plaintiff.

McGRATH, C. J. On April 1, 1890, defendant Cooper executed a lease to plaintiff of 14 acres of land near the city of Detroit, for farming purposes, for five years, at a rental of $110 per annum, payable, $55 October 1, 1890, and $55 April 1, 1891, and a like sum every six months thereafter during the continuance of the lease. Plaintiff claims an eviction on April 5, 1893, and defendant Cooper insists that plaintiff was in arrears for the rent due October 1, 1892, and that in December, 1892, he surrendered the premises; that he (Cooper) afterwards sold the land, and, after he had sold it, plaintiff came and tendered the balance of rent due, when he refused to permit a re-entry. The jury found for plaintiff.

Henry Pipper was called by defendants to show a conversation had with plaintiff in which the latter had admitted a surrender of the premises to Cooper. On cross-examination, plaintiff's counsel was permitted to show that the witness had held a lease from Cooper of other lands embraced in the sale made by the latter, and that Cooper had allowed him $240 by reason of his agreement to vacate the premises sold. This was clearly erroneous. It did not tend to show that plaintiff had not surrendered the lands rented by him before the sale was made, nor was what Cooper paid in order to effect a sale of his lands competent to show what the land was worth to Pipper, or what damages plaintiff had suffered.

We think the court erred in the instruction given as to

the measure of damages.[1]    There was no testimony tend-
ing to show that plaintiff was forced to remain idle for
the remainder of the term.    He testified that thereafter
he worked upon his own and other rented. land.    The
measure of his damages was the fair average value of the
use of the land, less the rent.    To ascertain this, it was
competent to show what he had realized from the land
for the three years during which he had occupied it,
deducting therefrom the expense and labor bestowed upon
it and the rent. .1 Sedg. Dam. (8th ed.) § 174.    He was.
also entitled to show that he had improved the fertility
of the land, and to recover for any labor which he had
bestowed upon it with reference to future crops.    Plaint-
iff was permitted to testify that his intention was to plant.
the entire parcel to vegetables in 1893 and 1894, and that,
in his opinion, the vegetables that he could have raised
would have been worth $100 and upwards per acre.    He
estimated the cost of fertilizers at $30 per acre, and the
cost of labor at $50 per acre.    Plaintiff had testified that
1891 was a very dry season, and from an acre and a half
of corn he realized $10; that in 1892 he plowed and
planted the entire 14 acres; that from two acres and a.
half of corn he realized $20; that his carrots, about an
acre and a quarter, were an entire failure; that from two
acres of cabbage he might have taken $25 or $30; that.
from half an acre of tomatoes he realized $15; that from
four acres of potatoes he realized 40 or 50 bushels; that
he sold ten bushels of peas at $1.25 per bushel; that he
had between four and five acres of tomatoes, from which
he did not realize $50.    Witnesses were allowed to testify

[1] The court charged that the plaintiff, if entitled to a verdict,
should recover the difference between the amount that he would
have made by farming the 14 acres and the amount that he
actually did make by working other land.

that land planted to garden vegetables would produce from $25 to $50 an acre each year as profits, with a favorable season. There was no testimony, and there could be none, as to the character of the season of 1894. The trial was had in May, 1894, and the lease, by its terms, expired April 1, 1895. The testimony clearly tended to show that the product of the premises depended largely upon the character of the season and other conditions. 1 Sedg. Dam. (8th ed.) § 185, lays down the rule that,—

" Where a lessor fails to give possession of the leased premises, the measure of damages is the difference between the actual rental value and the rent reserved. The rule is the same, whether the leased property is a farm, a dwelling-house or hotel, or business premises. If, however, the premises were necessary to the plaintiff for carrying on an established business, * * * the plaintiff might, on principles elsewhere discussed, recover further damages. The measure of damages [in such case] would be the difference between the rent and the value for the plaintiff's business, which would involve an allowance of profits. If the business were a new one, since there could be no basis on which to estimate profits, the plaintiff must be content to recover according to the general rule."

Plaintiff's testimony as to the probable yield of his strawberry patch and its probable market value, that he intended to crop the land with certain crops, and as to what, in his opinion, the value of the crops would be, as well as the testimony of others as to what the land planted to garden vegetables would yield, was incompetent, because too speculative. He is practically seeking to recover damages for the interruption to his business. It is what gain he can show with reasonable certainty that he would have made that he is entitled to recover for. The profits actually realized by him in the preceding years may be shown as tending to show the value to him of the premises; otherwise he must be limited in his recovery to the differ-

ence between the rental value in the market and the rent reserved.

The judgment is reversed, and a new trial granted.

The other Justices concurred.